NOT DESIGNATED FOR PUBLICATION

No. 119,601

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.A. and J.A., JR.,
Minor Children.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed March 8, 2019.
Affirmed.

*Wayne French*, of Topeka, for appellant natural father.

*Morgan L. Hall*, deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: J.A., father of M.A. and J.A., Jr., (Father) appeals the district court's termination of his parental rights. He contends the State produced insufficient evidence he was an unfit parent by conduct or condition and such conduct or condition was unlikely to change in the foreseeable future. J.C., mother of both children, (Mother) is not a party to this appeal. We find the decision by the district court to terminate Father's parental rights is supported by clear and convincing evidence. We affirm.

FACTS

On April 6, 2015, the State filed a petition alleging M.A. was a child in need of care (CINC) pursuant to K.S.A. 2018 Supp. 38-2202(d)(6), as she had excessive unexcused absences from school.

1

In August 2015, the Kansas Department for Children and Families (DCF) investigated concerns of homelessness, physical abuse, drug and alcohol use by Mother, and Mother's inability to provide for her three children, M.A., her brother, J.A., Jr., and sister, A.C. A.C. has a different father and is not part of this appeal. The reports also alleged Father was unable to provide care for his children since he was incarcerated. After unsuccessfully attempting Family Preservation Services, the State filed an amended petition to include J.A., Jr. and A.C., and the district court placed them in the custody of the Secretary of DCF.

In February 2016, Father entered a no-contest statement and the district court adjudicated the children as CINCs. On November 7, 2016, the State moved for a finding of unfitness and termination of parental rights for both Mother and Father. The State alleged the Father had no contact with the children since the case started, did not have a substantial relationship with them, and had remained incarcerated during the entire case. At the November 7, 2016 hearing, the district court found the case goal of reintegration was no longer viable and a case plan of termination of parental rights was in the children's best interests.

Although the Father had been incarcerated, he was released from the Kansas Department of Corrections (KDOC) on December 30, 2016. KVC Health Systems (KVC) social workers, upon his release, developed a case plan for Father to follow in order to reintegrate with his two children. The case plan tasks focused on Father's sobriety, mental health, and ability to provide for the children's basic needs, which included finding stable employment, housing, and refraining from illegal activity. With the plan in place, Father was optimistic about gaining custody of the children, but he inconsistently followed the plan and made little to no progress on its tasks.

After Father's release on December 30, 2016, he was again incarcerated from June 2 to June 13, 2017; August 26 to December 26, 2017; and from February 23 until the day of the termination hearing in March 2018. At the time of the hearing, Father was in federal custody following an indictment for unlawful possession of firearms by a felon. The district court found Father:

- Maintained minimal contact with the children, even while on parole;
- Was noncompliant with drug testing;
- Maintained contact with the caseworkers;
- Failed to substantially complete the rest of the case plan tasks;
- Continued using illegal substances and failed to obtain mental health evaluations;
- Failed to attend his parenting assessment;
- Failed to exhibit appropriate parenting skills at visitations;
- Failed to maintain stable employment; and
- Could not provide safe and stable housing, means of support, or provide for the mental, emotional, or physical needs of the children, in part, because of his incarceration at the time of the hearing.

The district court found Father's failure on parole combined with his failure to substantially comply with the case plan tasks showed his conduct or condition made him an unfit parent, and it was unlikely to change in the foreseeable future. The district court found by clear and convincing evidence Father's deficiencies supported termination of his parental rights under K.S.A. 2018 Supp. 38-2269(b)(3), (5), and (8); and (c)(2) and (3). The court also found termination of Father's parental rights was in the best interests of M.A. and J.A., Jr. as there was no indication Father would be able, in the foreseeable future, to provide an adequate home for them.

3

ANALYSIS

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). The statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit against Father.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives

4

"primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Here, the district court found Father to be unfit based on K.S.A. 2018 Supp. 38-2269(b)(3), (5), and (8); and (c)(2) and (3). Under K.S.A. 2018 Supp. 38-2269(b)(3), the district court shall consider the parent's "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental[,] or emotional needs of the child." Father contends the evidence did not support a conclusion that his continued use and struggles with substance abuse rendered him unable to care for his children. The evidence showed that upon release from prison in December 2016, Father completed a RADAC assessment, which concluded with a recommendation he attend and complete NA/AA support groups.

However, while in the community from December 2016 to June 2017, Father admitted to his parole officer he used marijuana and/or methamphetamine between 5 and 10 times. Additionally, he submitted to two urinalyses with positive results for marijuana and methamphetamine. His substance abuse issues were severe enough for his parole officer to seek revocation of his probation.

Upon release from his court-imposed sanction, Father participated in the KDOC's substance abuse program, but concerns of continued drug use persisted. He tested

5

positive for marijuana in July, and when parole staff searched his residence in August, they found a baggie of marijuana and a weapon in his room. Father's parole was revoked from August 26, 2017, until December 26, 2017. The KVC case manager testified Father's continued drug use prevented the agency from allowing unsupervised visits with the children. The evidence supports the district court's findings. Despite multiple referrals to and participation in services to assist with his substance abuse issues, Father's continued drug use denied him the ability to progress in gaining custody of the children. His continued drug use also contributed to his reincarceration and denied him the ability to provide for his children's needs. A finding of unfitness under K.S.A. 2018 Supp. 38-2269(b)(3) is supported by the evidence.

Under K.S.A. 2018 Supp. 38-2269(b)(5), the district court shall consider a parent's felony conviction and imprisonment. While Father contends his criminal history and history of multiple incarcerations does not impede his ability to parent the children, the evidence shows otherwise. The district court found Father was incarcerated during the following periods of time: April 2, 2009, to December 30, 2016; June 2 to June 13, 2017; August 26 to December 26, 2017; and from February 23 until at least March 19, 2018, the date of the termination hearing. Father pled guilty to aggravated robbery in 2009, and the district court found he had a criminal history score of B, indicating at least two prior person felony convictions. In February, just before the termination hearing, Father was indicted for unlawful possession of firearms by a felon. At the time of the termination hearing on March 19, 2018, Father was still incarcerated pending trial.

When Father was incarcerated in 2009, M.A. was only one year old and J.A., Jr. was two years old. Father informed the KVC case manager he had not had a relationship with the children since they were toddlers. Because of his incarceration, Father had no contact with the children or participation with social services for the first 21 months of the CINC case. Father was later incarcerated for 5 of the remaining 15 months before the termination hearing. The evidence shows the district court properly considered Father's

6

prior felony convictions and imprisonments. Both have prevented Father from developing a relationship with the children and presented an uncertain future as he was incarcerated at the time of the termination hearing. Thus, the evidence supports a finding under K.S.A. 2018 Supp. 38-2269(b)(5) criminal history and pending criminal charges make it impossible for him to parent his children any time in the near future.

Next, Father claims the district court improperly found he did not put forth effort to adjust his circumstances, conduct, or conditions to meet the children's needs under K.S.A. 2018 Supp. 38-2269(b)(8). He asserts he participated in the sex offender treatment and substance abuse programs as required by the conditions of his parole. He also claims between June and August of 2017, he showed effort, had a good attitude, and made a turnaround from his conduct prior to his jail sanction. Significantly, the case began in April 2015, Father was released from prison in December 2016, and the termination hearing occurred in March 2018. Father only contends he put forth effort to adjust his circumstances, conduct, or conditions for two months of that time.

The evidence does not support Father's claim and demonstrates he made little to no effort to adjust his circumstances, conduct, or conditions. While he was on parole, he continued using illegal substances and attempted to excuse his behavior by being open about his use. Despite his attendance and participation in programming, his drug use continued. Father was never financially stable nor consistently employed for a significant time to allow progress in reintegration. He never established stable housing, instead he bounced between friends and residences where the children could not live. He failed to schedule or attend mental health services and evaluations as required under the case plan.

Even considering the two-month period during which Father contends he put forth effort, the evidence reflects Father:

- Tested positive for drug use multiple times;

- Failed to find stable employment;

- Failed to find stable housing;

- Failed to develop a relationship with the children;

- Kept marijuana and guns in his room, which were later found; and

- Failed to follow the reintegration plan for mental health assessment and follow-up.

Father's actions resulted in his incarceration three times between December 2016 and the termination hearing.

The evidence supports the district court's finding Father lacked effort to adjust his circumstances, conduct, or conditions to meet the children's needs as defined by K.S.A. 2018 Supp. 38-2269(b)(8).

Additionally, when a parent does not have physical custody of the children, the court must consider the parent's failure to maintain regular visitation, contact, or communication with the children or the children's custodian under K.S.A. 2018 Supp. 38-2269(c)(2). Father contends he consistently maintained contact with the children when he was not incarcerated, so the evidence does not support the district court's finding of unfitness based on K.S.A. 2018 Supp. 38-2269(c)(2).

M.A.'s foster mother testified Father had sporadic visits with M.A. and J.A., Jr. between January and March 2017, then visitations stopped until December. She also stated Father had permission to call M.A. any time, but he only called once before the initial visitation. Multiple caseworkers testified about Father's lack of visitation with the children when he was not incarcerated. His visitation was sporadic and inconsistent.

Here, Father is asking this court to find him blameless for his return to prison while failing to acknowledge alternative methods of maintaining contact with the children or KVC. Father failed to seek alternative methods of communication. According to K.S.A. 2018 Supp. 38-2269(c)(2), Father was expected to maintain *regular* visitation, contact, or communication, and we find no exception permitting incarcerated parents to do nothing. Even when Father was not incarcerated, he never achieved consistency or regularity in his visitation or contact. The evidence supports the district court's finding of his failure to maintain regular visitation, contact, or communication with the children as set out in K.S.A. 2018 Supp. 38-2269(c)(2).

Next, the district court found Father unfit under K.S.A. 2018 Supp. 38-2269(c)(3), noting Father's failure to carry out a reasonable plan toward reintegration that had been approved by the court. Father complains caseworkers did not contact him beyond a few letters while he was incarcerated and he asserts once he was released he displayed the appropriate effort to work the case plan. However, the evidence does not support Father's contention he displayed the appropriate level of commitment to work the case plan.

While Father was incarcerated, the only case plan task assigned to him was to contact the assigned caseworker upon release; additional case plan tasks were assigned after his release. Father's case supervisor testified, upon his release, Father displayed appropriate effort, but his effort lasted approximately three months and vanished. From his initial release until the termination hearing, Father had 15 months to work toward reintegration. The reasonable plan adopted by the district court included:

- Establishing stable, safe housing where the children could reside; complete a drug and alcohol evaluation and follow recommendations;
- Obtaining a mental health assessment;
- Completing a parenting assessment;
- Maintaining regular contact with KVC; and

9

- Obtaining and maintaining a sufficient legal source of income.

The record reflects Father substantially complied with only one condition as he maintained contact with KVC.

After more than a year of reintegration tasks aimed at enabling Father to meet the children's basic needs, he made no progress. His lack of progress disallowed KVC to place the children with him. Though Father relies on his incarceration to blame KVC for him not making any progress in the first year and a half of this case, the case plan task assigned while he was incarcerated was the only one he fulfilled. The evidence supports the district court's finding Father was unfit due to his failure to carry out a reasonable case plan as required by K.S.A. 2018 Supp. 38-2769(c)(3).

In gauging the foreseeable future, the courts should use "child time" as the measure. As the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq., recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109, 605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's). Here, the young ages of the children when Father was incarcerated, his inconsistency throughout the case, and lack of progress support the district court's determination the conduct or conditions previously discussed are unlikely to change in the foreseeable future.

Last, we consider the district court's finding terminating Father's parental rights was in the best interests of the children. Our standard of review is considerably more deferential to the district court. We perceive no shortcomings in the district court's

10

assessment of the evidence or the applicable legal principles. The remaining component of the abuse of discretion standard simply asks whether a reasonable district court would come to the same conclusion under comparable circumstances. The answer is yes. The evidence shows Father had a limited relationship with the children prior to his release in December 2016. After that, his inconsistency and lack of progress did not consider the needs of the children. M.A. has maintained placement in the same foster home since the beginning of the case with her younger sister, A.C. J.A., Jr. has been in multiple placements, and KVC was working closely with his maternal grandparents. The district court's finding it was in the best interests of M.A. and J.A., Jr. to terminate Father's parental rights is supported by the evidence.

Affirmed.